UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JAMES BIZIK, )<br>)<br>    Plaintiff          )<br>)<br>    v.                 )<br>)<br>BRICKLAYERS LOCAL No. 6  )<br>OF INDIANA PENSION FUND, )<br>GERALD T. BROWN, JR., DEAN A. )<br>HOUPT, DALE E. JOHNSON, JOHN M. )<br>ARGENTA and FRED A. COLVIN, as )<br>TRUSTEES, BRICKLAYERS LOCAL No. 6 )<br>OF INDIANA WELFARE FUND )<br>-JOHN DOES 1 TO 5, as TRUSTEES and )<br>THE UNION LABOR LIFE )<br>INSURANCE COMPANY, )<br>)<br>    Defendants      ) | Cause No. 2:06-CV-365 RM |

OPINION AND ORDER

James Bizik claims benefits under his union pension and health care plans, which he alleges the defendants wrongfully denied. Mr. Bizik moves to enforce a purported settlement agreement between the parties, and for the reasons that follow, the court denies his motion.[1]

The following facts are recited for purposes of this motion only. The parties began settlement discussions in October 2006, including several phone conversations and email exchanges. On October 25, defense counsel sent Mr.

---

[1] After the parties briefed the motion to enforce settlement, the defendants moved for leave to file a surreply. Local Rule 7.1 doesn't contemplate a surreply, but district courts have the discretion to allow such supplemental briefs. See Johnny Blastoff, Inc. v. Los Angeles Rams Football Co., 188 F.3d 427, 439 (7th Cir. 1999). Because Mr. Bizik's reply raises factual issues that appear material to the legality of the purported agreement, the court now grants the defendants' motion [Doc. No. 26] and considers their surreply for purposes of the motion to enforce settlement.

Bizik's counsel a letter offering to pay a lump sum in exchange for dismissal of this lawsuit. The settlement offer specified that the sum "represents the monies which he [Mr. Bizik] paid into the Pension Fund and includes interest [ ] which is based on a six percent [ ] rate of return per annum." Mr. Bizik's counsel asked for clarification of the contribution calculation and defense counsel reiterated the initial offer.

On October 30, Mr. Bizik's counsel asked whether the payment of the sum would be made as a distribution from a retirement plan so that it could be rolled over into an IRA. Defense counsel's letter in response states that the "offer is to return Bizik Masonry's contributions made on Jim's behalf [ ] [so] [t]he Trustees cannot pay any money to Jim because the contributions were made by Bizik Masonry." Mr. Bizik's counsel asked for more time to accept the offer because the return of funds to Bizik Masonry, instead of Mr. Bizik, "significantly changed" the offer.

On November 3, Mr. Bizik's counsel sent defense counsel a letter accepting the terms of agreement as contained in the prior correspondences, specifically the payment of a sum to Bizik Masonry Corporation. Defense counsel tendered a proposed settlement agreement on November 17, and Mr. Bizik's counsel returned the agreement with some proposed modifications. On November 22, defense counsel sent Mr. Bizik's counsel an email indicating that deal was contingent on Mr. Bizik agreeing to the "breakdown of the money as as (sic) return of contributions . . . ." Mr. Bizik's counsel sent an email to defense counsel on

2

November 27, accepting the changes proposed by the defendants, including the breakdown of funds.

On December 20, defense counsel informed Mr. Bizik's counsel that the defendants had decided not to settle this matter. Mr. Bizik says the parties reached an enforceable agreement on November 3, which was modified through the exchange of the draft settlement and eventually accepted in all it terms on November 27. Mr. Bizik requests that the court enforce the purported settlement agreement, thereby ordering the defendants to pay Bizik Masonry Corporation the agreed sum. The defendants say the settlement agreement cannot be enforced because it violates ERISA.

Courts enforce the terms of settlement agreements like those of any other contract, Hatcher v. Consolidated City of Indianapolis, 323 F.3d 513, 515 (7th Cir. 2003), and a district court has the authority to enforce a valid and binding settlement agreement as judgment. Dillard v. Starcon Intern., Inc., 483 F.3d 502, 506 (7th Cir. 2007); Collins v. Educational Therapy Ctr., 184 F.3d 617, 620 (7th Cir. 1999). To determine whether the parties have entered into a valid and enforceable agreement, the court applies Indiana law, Dillard v. Starcon Intern., Inc., 483 F.3d at 506-507; Carr v. Runyan, 89 F.3d 327, 331 (7th Cir. 1996), under which a contract made in violation of a statute is generally void and unenforceable. Lee v. State, 816 N.E.2d 35, 38 (Ind. 2004). "If a contract contains an illegal provision that can be eliminated without frustrating the basic purpose of the contract, the court will enforce the remainder of the contract." Id. at 39.

ERISA governs plans that fall within the definition of an "employee welfare benefit plan" or an "employee pension benefit plan." 29 U.S.C. § 1002(3).[2] The parties don't dispute for purposes of this motion that the subject benefit plans are ERISA plans, of which Mr. Bizik was a participant.

ERISA's "anti-inurement" provision, 29 U.S.C. § 1103(c), provides in part:

> Except as provided in paragraph (2), (3), or (4) or subsection (d) of this section, or under sections 1342 and 1344 of this title (relating to termination of insured plans), or under section 420 of Title 26 (as in effect on August 17, 2006), the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

This provision generally means that "an ERISA trustee cannot transfer plan assets, directly or indirectly [ ]to the employer of its participants [ ]even though this might benefit the employees." Summers v. State Street Bank and Trust Co., 104 F.3d 105, 107 (7th Cir. 1997). Mr. Bizik argues that the "anti-inurement" provision doesn't preclude a settlement payment to Bizik Masonry Corporation because it isn't clear that "plan assets" are being used as the "sole source of the settlement payment contemplated by the agreement," and because the provision

---

[2] "Welfare plans" include "any plan, fund or program which ... was established or is maintained for the purpose of providing for its participants, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, death, or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services . . . ." 29 U.S.C.A. § 1002(1). An "employee pension benefit plan" is defined as "any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program–(I) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond . . . . " 29 U.S.C. § 1002(2)(A).

4

permits the trustee of a multiemployer plan to pay contributions to an employer, if such a contributions were made by the employer because of a mistake of fact or law. The court isn't persuaded by Mr. Bizik's arguments.

In his reply, Mr. Bizik confirms that "Bizik Masonry Corporation made contributions for more than 20 years on behalf of its employee, James Bizik, to the Defendants' multiemployer pension plan." The purported settlement that he seeks to enforce was memorialized in the agreement that is attached to his counsel's November 27 email. That agreement states that the source of the settlement fund "represent[s][ ]the monies which Bizik Masonry paid on behalf of James Bizik into the Pension Fund." The contributions made by Bizik Masonry Corporation on behalf of Mr. Bizik are plan assets, United States v. Whiting, 471 F.3d 792, 799 (7th Cir. 2006), and the record only supports one conclusion—these contributions are the source of the funds for the settlement agreement and they weren't made by the Bizik Masonry as a result of a mistake of fact or law. Payment to Bizik Masonry Corporation, even on Mr. Bizik's behalf, therefore violates ERISA's "anti-inurement" provision. The parties' negotiations also suggest that source of the funds was material to the agreement, so the court cannot enforce the agreement without frustrating its basic purpose.

Accordingly, Mr. Biziks' motion to enforce settlement agreement [Doc. No. 20] is DENIED.

SO ORDERED.

Entered:   July 24, 2007

5

        <u>    /s/ Robert L. Miller, Jr.    </u>
        Chief Judge
        United States District Court