UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JAMES BIZIK, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 2:06-CV-365RM |
| | ) | |
| BRICKLAYERS LOCAL No. 6 | ) | |
| OF INDIANA PENSION FUND, | ) | |
| GERALD T. BROWN, JR., | ) | |
| DEAN A. HOUPT, DALE E. JOHNSON, | ) | |
| JOHN M. ARGENTA, FRED A. COLVIN, | ) | |
| BRICKLAYERS LOCAL No., 6 | ) | |
| OF INDIANA WELFARE FUND, | ) | |
| JOHN DOES 1-5, | ) | |
| | ) | |
| Defendants | ) | |

## OPINION AND ORDER

When James Bizik, a union member since 1973, applied for pension and welfare retirement benefits from the Union's funds on 2005, the funds remembered that an audit in 2001 had shown irregularities in Mr. Bizik's contributions in 1999 and 2000. Based on those past irregularities, the funds asked Mr. Bizik for more information. Dissatisfied with the information Mr. Bizik produced, the funds denied his request. Mr. Bizik brought this suit under ERISA, 29 U.S.C. § 1001 *et. seq.*, to recover those benefits. The court heard cross-motions for summary judgment on July 28. For the reasons that follow, the court grants the defendants' motion and denies Mr. Bizik's motion.

I

Summary judgment is proper only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). "With cross-motions, our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made." Hess v. Reg-Ellen Mach. Tool Corp., 423 F.3d 653, 658 (7th Cir. 2005) (quoting Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund, 390 F.3d 1040, 1045 (7th Cir.2004)). Neither side contends that genuine fact issues exist.

Mr. Bizik entered the masonry trade as a laborer for DeVries in October 1973. He became a member of the Bricklayer's Union, Local No. 6 of Indiana the same year. Mr. Bizik became eligible for pension credit and vesting service credit through the Bricklayer's Local No. 6 of Indiana Pension Fund administered and governed by the plan Trustees. Mr. Bizik's covered employment also made him eligible for health coverage pursuant to the Bricklayer's Union, Local No. 6 Welfare Trust Fund administered by the Welfare Fund Trustees.

The Pension Fund and the Welfare Fund are multi-employer benefit funds created pursuant to and governed by ERISA. The Pension Fund provides retirement and related benefits for its participants, and the Welfare Fund provides health insurance and related benefits for its participants. ERISA requires each fund's Trustees to adopt and adhere to a trust agreement that creates the fund's governing body (the board of trustees) and the framework within which the board

2

of trustees govern the trust fund. Once the trust agreement is in place, the Trustees adopt a plan document that creates the requirements for individuals to qualify for benefits offered by the trust and the policies necessary to administer the trust.

According to the Pension Fund plan's terms, a plan participant is someone who has worked at least the minimum number of hours within a designated period of time in covered employment. One who has worked those hours must continue working the minimum and earn a sufficient number of pension and vesting credits to qualify for pension benefits. To be entitled to a vested pension, the participant must have a certain number of "pension credits" earned by completing at least 1,000 hours of service in a calendar year.

Mr. Bizik began working for Bizik Masonry Corporation, which his family owned, in 1979. Through an agreement with the Union, Bizik Masonry became a contributing employer, with the Union acting as the sole and exclusive collective bargaining representative for Bizik Masonry's employees, including (and for the most part consisting entirely of) Mr. Bizik. Mr. Bizik maintains that he was a participant in and continuously made contributions to the Pension Fund from 1973 through September 2005, when he retired from Bizik Masonry. During this time, Mr. Bizik also made contributions to the international union's pension plan and received health insurance coverage from the Welfare Fund, administered by Union Life. Mr. Bizik says he had sufficient pension credits through that employment and those contributions to qualify for the early retirement benefits

he sought in September 2005.

Mr. Bizik applied for local and international pension benefits and retiree health benefits. The international pension benefits were granted without issue, but the Pension Fund Trustees denied the local pension benefits and discontinued Mr. Bizik's health insurance benefits under the Welfare Fund. Mr. Bizik appealed the denial of his benefits, arguing that he had adequate vesting service to receive a pension under the Pension Fund and retiree health benefits under the Welfare Fund. The Trustees denied Mr. Bizik's appeal and determined that all administrative remedies had been exhausted.

The funds say they based their decision to deny benefits on § 6.02 of the plan document, which requires participants to "furnish, at the request of the Trustees, any information or proof reasonably required to determine his benefit rights." Section 6.02 also provides the Trustees may deny benefits not vested to a claimant who makes a wilfully false statement material to an application or furnishes fraudulent information or proof material to his claim.

Employers who have signed the collective bargaining agreement submit monthly reporting forms to the Pension Fund with a corresponding check for the amount of money shown due on the monthly report. The employer writes the name of each employee who worked that month, the hours worked, and the amount the employer is contributing on the employee's behalf. The Pension Funds review each employer's monthly reports and payments periodically to determine their accuracy. The Pension Fund's payroll auditor audited Bizik Masonry in

2000-2001. The auditor reported that the company was half union and half (Bizik Glass Block) non-union. Mr. Bizik was Bizik Masonry's only employee and said he could only work ten hours a week due to his medical conditions, but his brother-in-law paid 32 hours per week in contributions on his behalf to maintain his benefits. The report further showed that Mr. Bizik was making contributions to the plan during 1999 when he wasn't able to pay himself a salary. The funds' attorney discussed the issue with Mr. Bizik.

This issue reared its head again when the Trustees considered Mr. Bizik's retirement and request for benefits. The Trustees' attorney wrote Mr. Bizik about the earlier questions about the legitimacy of Bizik's contributions. Mr. Bizik and his attorney explained to the Trustees that Bizik Masonry (owned by Mr. Bizik's wife) and Bizik Glass Block both employed him. The Trustees expressed concern that the Bizik Masonry collective bargaining agreement was a fraud meant to obtain health and welfare pension coverages for Mr. Bizik. Mr. Bizik disagreed, and the Trustees agreed to review the issue. The Pension Fund wrote to Mr. Bizik's attorney and asked for a re-audit as well as access to tax returns. Mr. Bizik's attorney agreed to comply with § 6.02 of the plan but complained that the fund wasn't following the proper procedures. The Pension Fund again asked for detailed information and when the response was less than what they had requested, decided to deny the application for benefits as well as the Welfare Fund application.

The defendants say they denied benefits because Mr. Bizik was no longer

5

a participant in the Pension Fund based on his failure to answer questions raised in the 2001 audit and his refusal to provide a re-audit and examination. The April 2006 denial letter says his participant status in the Pension Fund was terminated retroactively to about 1984, at which point his then-five years of vesting service were lost because of the then-ten year requirement for vesting. The letter also reports the defendants' belief that Mr. Bizik was reporting more income on his monthly reporting forms to the Union/Pension Funds than actually was paid to him and that he was using Bizik Masonry fraudulently to make contributions to obtain a pension. The letter adds that the expanded audit offer was still on the table, and the audit's purpose would be simply to see whether the contributions were legitimate.

Mr. Bizik filed suit in Lake Superior Court, alleging that the defendants' denial breached the defendants' obligations under ERISA. Mr. Bizik sues the Pension Fund, the Pension Fund Trustees, the Welfare Fund, and the Welfare Fund Trustees. Mr. Bizik seeks reimbursement and compensation for benefits to which he claims he is entitled under the plans, future benefits payable, and prejudgment interest. Mr. Bizik also seeks an award of attorneys' fees and costs under ERISA, 29 U.S.C. § 1132(g)(1).

The defendants removed the suit to this court. Mr. Bizik and the defendants filed cross-motions for summary judgment.

II

Mr. Bizik argues, first, that the court should apply a *de novo* standard of review rather than reviewing the Trustees' decision for an abuse of discretion, because the employee benefit plan at issue failed to include safe harbor language. Mr. Bizik relies heavily on <u>Herzberger v. Standard Insurance Company</u>, 205 F.3d 327 (7th Cir. 2000), in which the court of appeals promulgated safe harbor language that should be included in an employee benefit plan to ensure that the reviewing court will review the Trustees' decision for an abuse of discretion. Section 6.03 of the Pension Fund's plan document doesn't state that the Trustees have the sole authority in their discretion to determine eligibility benefits.

Next, Mr. Bizik argues that regardless of whether the court applies the *de novo* or abuse of discretion standard, the defendants wrongfully denied him benefits earned while he was a member of the Union. He says he met the eligibility requirements for a vested pension and early retirement benefits, and the defendants didn't articulate a factual basis to the contrary to support their retroactive revocation of his participation. If the more restrictive abuse of discretion standard is applied, Mr. Bizik says, the decision to deny benefits was arbitrary and capricious because the denial letter contained no specific reasoning for invalidating his status back to 1984.

Mr. Bizik also maintains that the defendants are equitably estopped from denying him benefits because he relied on their misrepresentations about his pension credits. He says the defendants misled him to believe he was still eligible for pension benefits and health coverage after the 2001 audit by continuing to

7

provide him copies of benefit statements and accepting contributions. Mr. Bizik says that the defendants knew after the 2001 audit that they had questions about the legitimacy of the 1999 contributions made on his behalf, but continued to treat him as an eligible participant until he applied for benefits in 2005. He wasn't told that his benefits were in jeopardy; he received four years of documents and plan materials that indicated his continued eligibility for benefits and health coverage.

Mr. Bizik also argues that the defendants waived their right to deny benefits because they failed to investigate known facts that put them on notice — the defendants were concerned about the legitimacy of the 1999 contributions after the 2001 audit, but continued to accept contributions and payments for another four years.

The defendants argue that the Trustees' decisions to deny Mr. Bizik's applications for benefits should be reviewed under the deferential arbitrary and capricious standard. They seek judgment because the Trustees were complying with their statutory and fiduciary duties, and with the trust agreement and plan documents, when they audited Bizik Masonry and asked for more information about the contributions made on Mr. Bizik's behalf. They say they did what they had to do under Sections 6.02 and 6.03 of the plan document when they sought information that was reasonable and necessary to make a determination of Mr. Bizik's rights. The defendants maintain that the plan document's terms give the Trustees discretion in making benefit eligibility determinations, so that a reviewing

8

court may ask only whether the Trustees' decisions to deny benefits were arbitrary and capricious. The defendants claim that the Trustees made an informed judgment and articulated a satisfactory explanation in light of the available facts.

Finally, the defendants argue that Mr. Bizik can't recover on his ERISA claims because of his "unclean hands" resulting from contributions Mr. Bizik made in bad faith and the apparent intent to defraud the Pension and Welfare Funds.

A

Standard ERISA analysis requires the court first to identify the standard of review. The parties dispute whether language in the plan documents that the Trustees' decision on review shall be binding "except to the extent that such decision may be determined to be arbitrary or capricious by a court" confers upon the Trustees a power of discretionary judgment so that a court may set aside that judgment only if it was "arbitrary and capricious" rather than merely incorrect, the standard applied when review is *de novo*. See Perugini-Christen v. Homestead Mortg. Co., 111 F. Supp. 2d 1044, 1045-1046 (N.D. Ind. 2000).

A "denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The standard of review is presumed to be *de novo* unless

9

language in the plan documents give the trustees or administrator discretionary authority to determine benefit eligibility. Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 385-386 (2002).

In Herzberger v. Standard Insurance Company, 205 F.3d 327 (7th Cir. 2000), the court of appeals sought to clarify the standard of review, holding that "the mere fact that a plan requires a determination of eligibility or entitlement by the administrator, or requires proof or satisfactory proof of the applicant's claim, or requires both a determination and proof (or satisfactory proof) does not give the employee adequate notice that the plan administrator is to make a judgment largely insulated from judicial review by reason of being discretionary." 205 F.3d at 332. The court set forth "safe harbor" language an employer can use to ensure that courts review benefits denials under the abuse of discretion standard: benefits under the plan will be paid only if the administrator decides in his discretion that the applicant is entitled to them. Id. at 333 ("[I]f a plan is going to reserve a broad, unchanneled discretion to deny claims, [plan participants] should be told this, and told clearly."). More recently, the court of appeals clarified that "[t]he reservation of discretion must be communicated clearly in the language of the plan, but the plan need not use any particular magic words." Gutta v. Std. Select Trust Ins. Plans, 530 F.3d 614, 619 (7th Cir. 2008). The court stated further that, "the critical question is whether the plan gives the employee adequate notice that the plan administrator is to make a judgment within the confines of pre-set standards, or if it has the latitude to *shape the application,*

10

*interpretation, and content of the rules in each case."* Id. (*quoting* Diaz v. Prudential Ins. Co. of Am., 424 F.3d 635, 639 (7th Cir. 2005)).

Section 6.03 of the Pension Fund's plan document vests the Trustees with "discretionary powers" and says that "they shall exercise such powers in a uniform and non-discriminatory manner." Section 6.03(b) states that the "Trustees shall, subject to the requirements of the law, be the sole judges of the standard of proof required in any case and the application and interpretation of this Plan, and decisions of the Trustees shall be final and binding." The plan document goes on to state that all questions or controversies arising as to matters including any claim for benefits "shall be submitted to the Board of Trustees for decision," and if

> a claim for benefits has been denied, no lawsuit . . . may be filed until the matter has been submitted for review under the ERISA-mandated review procedure . . . . The decision on review shall be binding upon all persons dealing with the Plan or claiming any benefits hereunder, except to the extent that such decision may be determined to be arbitrary or capricious by a court or arbitrator having jurisdiction over such matter.

Section 6.03 of the Pension Fund's plan document gives the Trustees discretion in determining benefits. The language unambiguously places participants on notice that the Trustees have the sole discretion to make benefits decisions. *Contrast* Diaz v. Prudential Ins. Co. of Am., 424 F.3d at 638-640 (applying *de novo* standard of review to pension plan which required proof of a claim to be "satisfactory" to the administrator but failed to confer discretion on the administrator). The court of appeals has applied an abuse of discretion standard

11

when the language of the plan document explicitly outlines the administrator's authority to make conclusive and binding decisions. *See* Semien v. Life Ins. Co. of N. Am., 436 F.3d 805, 810-811 (7th Cir. 2006) (applying abuse of discretion standard where the plan stated: " . . . sole discretion and authority to apply, construe and interpret all Plan provisions, to grant or deny all claims for benefits and to determine all benefit eligibility issues."); Shyman v. Unum Life Ins. Co., 427 F.3d 452, 455 (7th Cir. 2005) (reviewing decision under arbitrary and capricious standard where plan stated: " . . . discretionary authority to determine your eligibility for benefits and to interpret the terms and conditions of this Policy."). Accordingly, the court reviews the Trustees' Pension plan decision deferentially, to ensure that the ultimate decision as not arbitrary. *See* Gutta v. Std. Select Trust Ins. Plans, 530 F.3d at 619.

B

Mr. Bizik maintains that *de novo* review is necessary because of an inherent conflict of interest created by the defendants' discretion to both decide employees' application for benefits as well as their responsibility to pay claims, suggesting that the defendants have a financial interest in denying claims. He cites Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2357 (2008) ("If a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.") (citations omitted). The court of appeals has

12

"repeatedly rejected arguments for a heightened standard of review solely because a corporation or insurer interprets its own plan to deny benefits." Hess v. Reg-Ellen Mach. Tool Corp., 423 F.3d 653, 659 (7th Cir. 2005) (*citing* Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan, 195 F.3d 975, 981 (7th Cir. 1999); Chojnacki v. Georgia-Pac. Corp., 108 F.3d 810, 815 (7th Cir. 1997); Chalmers v. Quaker Oats Co., 61 F.3d 1340, 1344 (7th Cir. 1995) (pointing out that ERISA endorses the notion of a corporate officer who doubles as a plan administrator)). Still, the court must evaluate a structural conflict. Raybourne v. Cigna Life Ins. Co., 2009 WL 2392788, at *5 (7th Cir. Aug. 6, 2009).

Nothing in this record would support an inference that the conflict is more than structural. There is, for example, no suggestion that the plan administrator keeps any surplus in the funds or receives any different compensation based on the size of the funds. The summary judgment record contains nothing beyond the structural conflict from which an inference could be drawn that the dual capacity affected in any way the decision-making with respect to Mr. Bizik.

C

Under the arbitrary and capricious standard, the Trustees' decision can be overturned only if the decision conflicts with the plain language of the Pension Fund plan. Thus, it can be overturned only if its is "downright unreasonable." Hess v. Reg-Ellen Mach. Tool Corp. Employee Stock Ownership Plan, 502 F.3d 725, 727 (7th Cir. 2007) (*quoting* Cozzie v. Met. Life Ins., 140 F.3d 1104, 1110 (7th

13

Cir. 1998)). Whether or not the court would have reached the same determination on initial review is irrelevant. *See* Ruiz v. Cont'l Cas. Co., 400 F.3d 986, 991 (7th Cir. 2005); Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan, 144 F.3d 1014, 1021 (7th Cir. 1998).

A court's review under the arbitrary and capricious standard is limited to the evidence in the administrative record. Hess v. Reg-Ellen Mach. Tool Corp., 423 F.3d 653, 662 (7th Cir. 2005); Vallone v. CNA Fin. Corp., 375 F.3d 623, 629 (7th Cir. 2004); Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan, 195 F.3d 975, 981-82 (7th Cir. 1999). The parties agree that the court may only consider materials which were part of the administrate record before Mr. Bizik filed his appeal of the Trustees' decision, but Mr. Bizik argues that the defendants are trying to introduce evidence (specifically Exhibits C, D, and E to their motion for summary judgment) not cited in the April 2006 determination letter. The April 2006 denial letter cites the audit notes and the Trustees' reports contained in Exhibits C, D, and E to their motion for summary judgment, so those materials are part of the administrative record and the court may consider them.

The Pension Fund Trustees' decision wasn't arbitrary or capricious; it was correct. As fiduciaries, the trustees were required to comply with both ERISA and with their own trust agreements and plan documents. Each fund requires a participant to be eligible with respect to a variety of qualifications, and an audit may be needed to decide whether a "self-billed" and "self-paid" employee fits the plans' definition of "fund participant." The duty — a fiduciary duty to all

14

participants, *see* Ameritech Benefit Plan Comm. v. Commc'n Workers of Am., 220 F.3d 814, 825 (7th Cir. 2000) ("The fiduciary must act as though it were a reasonably prudent businessperson with the interests of all the beneficiaries at heart.") — to determine whether Mr. Bizik was a fund participant was triggered when Mr. Bizik applied for benefits with the 2001 audit as part of his history. Section 6.02 gave the Trustees the right to ask for "any information or proof reasonably required to determine" entitlement, and to deny benefits not vested if the claimant made a willfully false statement material to his application or furnished fraudulent information or proof material to his claim.

Mr. Bizik's decision not to comply with the Trustees' request for documents left the Pension Fund Trustees with two choices. They could ignore the red lights blinking in Mr. Bizik's request and pay him benefits to which he might well not be entitled under the plans, or they could deny him benefits because of his refusal to comply with the Trustees' request under the plan. The Trustees' fiduciary duty to the plan and the other participants required them to make the latter choice.

The record doesn't bear out Mr. Bizik's contention that the defendants failed to provide him with their reasons for their decision. The Trustees' letter said they were denying the request for benefits because of Mr. Bizik's failure to comply with the plan by providing requested records, and even offered to reconsider should Mr. Bizik choose to provide the records. No clearer exclamation was required.

D

The Welfare Fund's plan didn't contain the language found in the Pension Fund's plan, though, so the Welfare plan's decision must be reviewed under the more demanding *de novo* review standard. ERISA requires plan trustees or fiduciaries to discharge their duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D); Patterson v. Shumate, 504 U.S. 753, 760 (1992). Likewise, ERISA instructs courts to enforce strictly the terms of plans. 29 U.S.C. § 1104(a)(1)(D); Riordan v. Commonwealth Edison Co., 128 F.3d 549, 552 (7th Cir. 1997).

Once the Pension Fund trustees made their decision, there was little left for the Welfare Fund trustees to do. Mr. Bizik proposes no rationale under which the Welfare Fund could have provided him with benefits while the Pension Fund denied benefits. Even under the most demanding *de novo* standard, no rational fact-finder could decide that the Welfare Fund trustees made the wrong decision.

E

Mr. Bizik argues that the defendants either waived, or are estopped from asserting, any argument that contributions made on his behalf were improper, because they continued to accept contributions on Mr. Bizik's behalf from Mr. Bizik's employer even after knowing of the past problems. The court's review of the documents discloses no provision that would have allowed the defendants to refuse the contributions, or to insist upon another audit before Mr. Bizik eventually made his claim. If, as it appears from the summary judgment record,

the defendants had no choice but to continue to accept the contributions paid on Mr. Bizik's behalf, the defendants cannot be said to have waived any rights by doing the only thing the plan documents allowed them to do. Perhaps more importantly, the defendants didn't refuse to pay the benefits because the contributions were improper; they refused to pay the benefits because Mr. Bizik wouldn't comply with their request for records under the plan. The defendants couldn't waive this ground by accepting contributions before Mr. Bizik requested his benefits.

### III

For the foregoing reasons, the court GRANTS the defendants' motion for summary judgment (doc. # 59) and DENIES Mr. Bizik's motion for summary judgment (doc. # 49).

SO ORDERED.

ENTERED:   September 9, 2009

　　　　　　　　　　　　　　　　  /s/ Robert L. Miller, Jr.
　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　United States District Court